**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| REHANA BIBI, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.:  1:20-CV-1478-LMB-MSM |
| | ) | |
| MIR SHAKIL-UR-RAHMAN, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS SHOAIB & AYESHA YAHYAS' MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants Nooruddin Shoaib Yahya[1] and Ayesha Yahya, husband and wife (collectively, the "Yahyas"), move to dismiss the Complaint with prejudice.[2]

Plaintiff, a former live-in domestic employee at the Yahyas home in Loudoun County, Virginia, proffers legal conclusions suggesting that she was kept in slave-like conditions for nearly five years.  These allegations are as reprehensible as they are false.  The Yahyas categorically deny them.[3]  Plaintiff Bibi was employed of her own free will as a live-in caretaker by Mr. Yahya's now-deceased mother, Ammatul Yehya ("Mother").  The Court, however, need not address the actual evidence in the case to dispose of the bulk of Plaintiff Bibi's Complaint, which overwhelmingly fails to provide factual allegations sufficient to support the legal claims it makes against the Yahya Defendants.  Ms. Bibi's Complaint explicitly states that for the entirety of the five years she lived with the Yahyas, she was in daily contact with the outside world, and

---

[1] Mr. Yahya's first and middle names are incorrectly switched in the Complaint.

[2] With the possible exception of her FLSA and contract claims for a one-year period from 2017-2018, if Plaintiff can amend her Complaint with additional allegations to make those claims legally sufficient.

[3] For purposes of this Dismissal Motion, Defendants assume the allegations to be true.  *E.g., Prince George Prince George Winyah v. Guideon Mut. Ins. Co.*, 2020 U.S.App. LEXIS 39547 at *1 (4th Cir. Dec, 16, 2020).

that she was able to leave the first time she tried.  There are no allegations that anyone kept her from leaving the Yahya home.  Taking the allegations in the light most favorable to her, Ms. Bibi was oppressed, not trapped.  Enduring unpleasant working conditions does not make someone a victim of trafficking or false imprisonment. And, notwithstanding her emphasis of those purported working conditions, Ms. Bibi has also not adequately pled her FLSA and contract-related claims.  For the reasons set forth below, Counts I-VI, VII(A), VIII(A) & (B), and IX-XI, should be dismissed.[4]

### I. The Complaint's Factual Averments.

According to the Complaint's allegations, Plaintiff Rehana Bibi is a 45 year-old citizen of Pakistan who speaks and reads only Urdu, and was married at all times pertinent to her suit. Compl. ¶¶ 2, 8, 9.  On July 2, 2013, Ms. Bibi, while still living in Pakistan, entered into a written contract with Defendant Mir Shakil-ur-Rahman.  *Id.* ¶ 14.  She was able to read and understand the agreement, and the portions she did not understand were read or explained to her.  *Id.* ¶ 15. Ms. Bibi states that the point of the agreement was for her to "accompany [Rahman] family members on a trip to the United States . . . and thereafter work in their family home in Leesburg, Virginia."  *Id.* ¶ 12.

According to the written agreement between Ms. Bibi and Defendant Mr. Rahman, she would "accompany his family to look after them during their traveling and stay in the USA[,] and she "consented to go with [his] family in [sic] USA for a period as may be deem [sic] fit and appropriate by [Mr. Rahman]."  *Id.* Ex. B at p. 1.  The contract required Mr. Rahman to pay for Ms. Bibi's visa and travel expenses.  *Id.*  The Complaint does not allege that Mr. Rahman breached this requirement.  The contract also required that "all expenses of [Bibi] such as boarding, lodging, food medical, etc., shall be borne by [Mr. Rahman] throughout the period

---

[4] Count VII(B) is made against only the other two Defendants in this case, Mr.  and Mrs. Rahman.

[Bibi] shall accompany and stay with [the] family in the USA." *Id.* at pp. 1-2.  The Complaint does not allege that Ms. Bibi's boarding, food, and medical care were not paid for, though it does claim that Defendants failed to provide her these items in sufficient quantity and quality. *See* Compl. ¶¶ 34-35, 37(a)-(d), 38(a)-(d), (i).

The agreement further provided that Ms. Bibi would be paid $15/hr for 40 hours per week, with weekends off, and 1½ hourly pay for any day with more than eight hours of work, or any week with more than 40 hours of work, and that Mr. Rahman would abide by all labor laws applicable to domestic servants. *Id.* Ex. B at pp. 1-2.  Ms. Bibi's Complaint does allege violations of this obligation, claiming that she was obligated to be on call 24 hours a day every day of the week, for five years, *id.* ¶¶ 27(a), (b), (f), 29, 30, that she worked up to 20 hours per day, id. ¶ 30, was denied days off and breaks during the day, *id.* ¶¶ 32-33, 36, and alleges that she was paid less than $25,000.00, without specifying the days and hours she worked, but asserting that she is owed more than $25,000.00.  *Id.* ¶ 67.  Ms. Bibi also alleges that Mr. and Mrs. Yahya (in whose Leesburg home she lived and worked) promised to pay her $150/month to assist in caring for their infant son, but that they failed to do so for some period of time between November 2014 and January 2015, *id.* ¶¶ 5-6, 23-24, 59-61, as well as that the Yahyas retained 75,000 rupees owed to her as payment for her labors.  *Id.* ¶¶ 62-63.  The Complaint states that Ms. Bibi was paid in rupees rather than dollars, *id.* ¶¶ 55, 58, 61, 66, but nowhere states whether she ever agreed to be paid in that currency, or what its U.S. dollar equivalent was for the periods involved.  The Complaint also alleges that all of Ms. Bibi's compensation was sent to her husband directly in Pakistan, *id.* ¶¶ 58, 61, 64-66, but it does not state whether Ms. Bibi ever agreed to (or even requested) that arrangement.  The Complaint conclusively states that Ms. Bibi's husband "lacked as well the means to do anything to assist his wife," *id.* ¶¶ 43 and 50, and

that she was "unable to receive assistance from her husband," *id.* ¶ 51, but does not explain why that was the case.  The Complaint avers that she spoke with her husband almost every day by phone for those five years, as well as with other members of her family.  *Id.* ¶¶ 38(j), 42.

The written agreement with Mr. Rahman also required Ms. Bibi to "diligently and carefully perform her duties and look after [Mr. Rahman's] family and perform domestic work properly, *id.* Ex. B at p.1, which contractual requirement Ms. Bibi asserts she fulfilled.  *Id.* ¶ 28.

Additionally, the agreement stated that Mr. Rahman would not withhold Ms. Bibi's passport or keep her from leaving the premises of the Yahya's house.  *Id.* Ex. B at p.2.  The Complaint alleges that Mrs. Rahman "confiscated" Ms. Bibi's passport and gave it to the Yahyas, who purportedly hid it from Ms. Bibi.  *Id.* ¶ 25.  The Complaint does not state whether Ms. Bibi ever requested of any of the Defendants that her passport be returned to her, or that they denied such a request.

The Complaint alleges that Ms. Bibi was taken to the dentist three times, *id.* ¶ 35, received medical treatment on a few occasions and saw a doctor six to seven times, *id.* ¶¶ 34, 38(i), attended Christmas services at church, *id.* at 33, went to a neighborhood park with the Yahya children and no other adults five to seven times, *id.* ¶ 45, and spoke freely and privately with delivery personnel who came to the Yahya's home.  *Id.* ¶ 47.  Nowhere does the Complaint ever assert that any Defendant in any way ever physically restrained Ms. Bibi from leaving the Yahya home, or prevented her from using the phone.

## II.  The Motion to Dismiss Standard & Requirement that Allegations Refer to Specific Defendants.

Under Rule 12(b)(6), a party may move to dismiss an action where the complaint fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  Because a Rule 12(b)(6) motion tests only the "legal sufficiency" of the complaint, a court's must determine

whether the complaint satisfies the minimal pleading standard under Rule 8.  *See Regents of the Univ. of Cal. v. Willis Towers Watson, PLC,* 937 F.3d 297, 312 (4th Cir. 2019). Specifically, Rule 8(a)(2) states that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require "detailed factual allegations" to survive a motion to dismiss, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of satisfying the Rule 8 pleading standard. *See id.* (referencing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must contain sufficient factual matters to state a claim to relief that is "plausible on its face," such that the allegations allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* (referencing *Twombly*, 550 U.S. at 556). Thus, while a court must take all factual allegations in the complaint as true in evaluating a Rule 12(b)(6) motion to dismiss, it "need not assume the veracity of bare legal conclusions." *See Balas v. Reveley*, 734 Fed.Appx. 201, 202 (4th Cir. 2018): *Twombly*, 550 U.S. at 555 (explaining that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Further,  Rule 8(a) requires that "actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." C.Wright & A. Miller *Federal Practice & Procedure* § 1248 (3d ed. 2020); *accord*, *Tietjen v. Wells Fargo Home Mortg.*, 2011 U.S. Dist. LEXIS 10760 at *5 (D.Ariz. Feb. 3, 2011).  "Threadbare allegations" such as "generic references to the misconduct of 'all Defendants'" cannot meet the Federal

Rules' notice-pleading standard.  *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011).

### III.  Argument

**A.   Plaintiff's Allegations Do Not Describe the Egregious Conduct Necessary to Support Forced Labor or Involuntary Servitude Generally, and Fail to Adequately Plead the Individual Trafficking Causes of Action.**

**1.   Unpleasant Working Conditions Are Not Human Trafficking Violations Under 18 U.S.C. §§ 1589 and 1584.**

The Complaint's first six causes of action rest on the (false) premise that Ms. Bibi was subjected to forced labor and/or involuntary servitude under the Trafficking Victims Protection Act ["TVPA"), 18 U.S.C. § 1581, *et seq.*  Count II is for "Forced Labor in Violation of 18 U.S.C. § 1589."  Count I asserts that Defendants engaged in "Trafficking for Purposes of Forced Labor in Violation of 18 U.S.C. § 1590," which requires that she have been subjected to forced labor within the meaning of § 1589.  Count IV claims Defendants engaged in "Involuntary Servitude in Violation of 18 U.S.C. § 1584."  Count III, in turn, for "Unlawful Confiscation Travel Documents in Violation of 18 U.S.C. § 1592(a)," requires not only that her travel documents have been taken from her, that it be done so in the course of subjecting her to forced labor or involuntary servitude, as defined at 18 U.S.C. §§ 1589 and 1584.  Her Count V, "Benefitting Financially from Trafficking in Violation of 18 U.S.C. § 1593A," likewise requires the predicate that Ms. Bibi have been the victim of forced labor or involuntary servitude. The last such claim, Count VI, "Conspiracy to Violate the Trafficking Victims Protection Act," brought under 18 U.S.C. § 1594(b), similarly depends on two or more of the Defendants having conspired to subject Ms. Bibi to forced labor, trafficked her for that purpose, or taken her travel documents to accomplish forced labor or involuntary servitude.

The facially obvious problem with all of these counts is that Ms. Bibi has not pled facts that can meet the stringent requirements for human trafficking claims.  Ms. Bibi may well have described employment circumstances that were unpleasant, but she has not remotely suggested facts making out a legal case for forced labor or slavery.

> **a.  Ms. Bibi's Allegations of Poor Working Conditions Do Not Support a § 1589 Forced Labor Claim Because the Complaint States She Was in Daily Contact With the Outside World, Was Not Prevented from Leaving the Yahya Home, and Was Able to Leave the First Time She Tried.**

The Fourth Circuit has explained, "Not all bad employer-employee relationships or even bad employer-immigrant relationships will constitute forced labor." *Muchira v. Al-Rawaf*, 850 F.3d 605, 620 (2017) (cleaned up), citing *U.S. v. Bradley*, 390 F.3d 145, 155 (1st Cir. 2004) (noting distinction between "merely abusive employers" and employers who "deliberately sought to compel forced labor"). "Section 1589 is intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.  The harm or threat of harm, considered from the vantage point of a reasonable person in the place of the victim, must be sufficiently serious to *compel* that person to *remain* in her condition of servitude when she otherwise would have left." *Muchira*, 850 F.3d at 618 (cleaned up) (emphasis in original), also citing *United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015) (holding that jury was properly instructed "to consider whether as a result of [defendant's actions and threats], the [victim] continued to provide labor or services where, if [defendant] had not resorted to these unlawful means, the person would have declined to perform additional labor or services") (internal quotation marks omitted)).

To establish a forced labor claim against the Yahyas, Ms. Bibi must plead facts reasonably suggesting that the Yahyas "*knowingly* or *intentionally* engaged in actions or made

threats that were sufficiently serious to compel a reasonable person in [her] position to *remain* in the [Yahyas'] employ, against her will and in order to avoid such threats of harm, when she otherwise would have left. *Muchira*, 850 F.3d at 620 (emphasis in original).  The standard "requires that the victim's acquiescence be *objectively reasonable* under the circumstances."  *Id.* at 618 (cleaned up) (emphasis in original).

Ms. Bibi's core allegations closely track the plaintiff's facts in *Muchira*, which facts the Fourth Circuit held did not constitute trafficking.  Ms. Bibi admits she came to the U.S. willingly.  *Id.* at 619, 622 (the defendant family accused of forced labor "employed no means of force or threats to bring her here").  Other than purportedly being struck twice by the Yahyas' pre-teen son over the course of five years, she does not claim that the Yahyas physically abused her, threatened her or her relatives with physical harm, or kept her from leaving their home or their employment.  *Id.*  Ms. Bibi was not young or inexperienced when she came to the U.S.; she was approximately 37, and had previously worked for the Rahman family in Pakistan.  *Id.* at 620.  She fully understood the written contract she made with Mr. Rahman in July 2013 in Pakistan, and ended up performing the tasks in the U.S. that were described in that contract.  *Id.; accord, Panwar v. Access Therapies, Inc.*, 2015 U.S. Dist. LEXIS 38117 at *8 (S.D.Ind. March 25, 2015) (holding no forced labor scheme where plaintiffs voluntarily entered into employment agreement without coercion or deception).  She lived in an urban area where she "had the unobstructed ability to walk away at any time."  *Muchira*, 850 F.3d. at 621.  By her own admission, she spoke to her husband almost every day, as well as other relatives.  Such conditions could hardly lead a reasonable person to believe she was "psychologically imprisoned in a forced labor situation." *Id.*  One cannot cognizably assert a forced labor claim where, as here, Ms. Bibi was able to terminate her employment and walk away the first time she tried. *Id.* at 622, citing *Headley v.*

*Church of Scientology Int'l*, 687 F.3d 1173, 1177 (9th Cir. 2012). Even taking at face value Ms. Bibi's claims that her wages were paid to her husband instead of her, or otherwise withheld by some of the Defendants, labor law violations do not support a forced labor claim. *Garnica v. Edwards*, 72 F.Supp.3d 411, 415 (S.D.N.Y. 2014).

Ms. Bibi's Complaint suggests that she worked very hard, was on call 24 hours per day, every day of the week, was not given breaks or days off, and that the Yahya Defendants were indifferent to her illnesses and need for bereavement. Compl. ¶¶ 29-36. It further suggests that her living arrangements were sub-optimal, that she lacked privacy, that Ms. Yahya treated her in a derogatory and demeaning manner, that she was not provided meat and fruit, and that the Yahya children were disrespectful toward her. Compl. ¶¶ 37-38. Even if true, however, and as unpleasant as these allegations are, they do not state a statutory claim for forced labor under § 1589. "[A]rduous, demeaning, or even terrible working conditions or employment requirements alone will not suffice. These conditions may precipitate an employee's departure from an employer—such as [Ms. Bibi did here]—but unless those conditions are used *to obtain and keep* an employee's labor, they cannot support a claim of forced labor." *Martinez-Rodriguez v. Giles*, 391 F.Supp.3d 985, 998 (D.Idaho 2019) (emphasis in original), citing *Headley*, 687 F.3d at 1180. An employer being "overbearing, controlling, and even downright insensitive at times, being tough, rude, or even abusive does not rise to the level of forced labor under the TVPRA unless those things *induced Plaintiff*[] *to stay*." *Martinez-Rodriguez*, 391 F.Supp.3d at 998 (emphasis in original). Disagreeable though she may claim her time with the Yahyas was, by her own admission, Ms. Bibi had daily contact with the outside world and was able to leave the first time she tried. That forecloses a forced labor claim under § 1589, and the derivative claims

under §§ 1590, 1592(a), 1593A, and 1594(b) that depend on Plaintiff having been subjected to forced labor.

### b. Ms. Bibi's § 1584 Claim for Involuntary Servitude Fails Because the Conditions Described Are Not Akin to African Slavery.

Just as the Complaint fails to make out a forced labor claim under § 1589, *a fortiori,* it fails to plead the even more serious offense of involuntary servitude under § 1584. Under § 1584:

> "The phrase involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). "Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993); *see, e.g., United States v. King*, 840 F.2d 1276, 1280 (6th Cir. 1988) (religious sect violated 18 U.S.C. § 1584 where they "used and threatened to use physical force to make the children at their camp perform labor and the children believed they had no viable alternative but to perform such labor"); *United States v. Booker*, 655 F.2d 562, 563, 566 (4th Cir. 1981) (migrant labor camp held farm workers in involuntary servitude, forbade them from leaving without paying their debts, and enforced the rule with threats of physical harm, actual physical injury, and by kidnapping and returning to the farm workers who attempted to leave); *Jobson v. Henne*, 355 F.2d 129, 131-32 (2d Cir. 1966) (patients in mental institution performing required labor stated Thirteenth Amendment claim).

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 540 (3rd Cir. 2012) (cleaned up).

While Plaintiff Bibi has presented claims of some difficult working conditions, she has "demonstrated nothing 'akin to African slavery' or any modern analogue. Any such comparison is plainly frivolous." *Id.* Hence, Ms. Bibi's forced labor claim under § 1584 is legally impossible, as are the derivative claims under §§ 1592(a), 1593A, and 1594(b), that depend on the Plaintiff having been subjected to involuntary servitude.

2. **The Complaint Fails to Provide Facts Sufficient to Support the Individual Trafficking Causes of Action.**

Plaintiff's causes of actions reveal the Complaint's failure to comply with Rule 8(a)'s requirement that each claim specify which acts, and against which defendant(s), each legal theory is brought.  *See* Compl. pp. 26-30 (Counts I-VI). As further detailed below, in addition to lacking the underlying prerequisite of forced labor or involuntary servitude, all of Ms. Bibi's trafficking theories are woefully underpled.

a. **Count I (Trafficking for Purposes of Forced Labor in Violation of 18 U.S.C. § 1590).**

Count I refers to the "defendants" generically, asserting they "knowingly recruited Ms. Bibi in Pakistan and transported her here for the purpose of subjecting her to forced labor in violation of 18 U.S.C. § 1590."  Compl. ¶ 78.   Nothing in the Complaint suggests any involvement by the Yahyas in Ms. Bibi's recruitment, or transportation to the U.S.  By contrast, the Complaint does allege that the other defendants, the Rahmans (husband and wife), "proposed an agreement to Ms. Bibi" to travel to the U.S. and work in Leesburg, *id*. ¶ 12, that Ms. Rahman presented the employment agreement to Ms. Bibi in Mr. Rahman's office and that he was a signatory on that agreement.  *Id.* ¶¶ 14-15, 17 and Ex. B (July 2, 2013 Employment Agreement). The Complaint further alleges that Mr. Rahman sought and obtained a visa so that Ms. Bibi could work in America, *id.* ¶¶ 18-21, and that the couple then made arrangements for Ms. Bibi to travel from Pakistan to Leesburg.  *Id.* ¶¶ 23-24.   The Yahyas were not party to that contract. Not a single fact is alleged showing any involvement by the Yahyas in Ms. Bibi's recruitment, or transportation to the U.S.  Instead of factual allegations, Plaintiff rests on surmise, stating that the Rahmans were the "authorized agents for the [Yahyas], *id.* ¶¶ 12, 17, with whom they "conspired" "to defraud Ms. Bibi into coming into the United States under false pretenses to

work." *Id.* ¶ 20.  Nor does any of this describe trafficking by <u>anyone</u>, as Ms. Bibi describes her

decision to enter into the contract and come to the U.S. to work for the family as being entirely

voluntary.  *Saiyed v. Archon, Inc.*, 2020 U.S. Dist. LEXIS 234234 at *12 (D.N.J. Dec. 14, 2020).

"While satisfying the Rule 8(a) standard is not an onerous task, more than legal

conclusions and speculation are required[.].  *Riddick v. Watson*, 2020 U.S. Dist. LEXIS 221817

at *41 (E.D.Va. Nov. 25, 2020).  "[M]ere conclusory and speculative allegations are not

sufficient to withstand a motion to dismiss."  *Painter's Mill Grill. LLC v. Brown*, 716 F.3d 342,

350 (4th Cir. 2013), citing *Twombly*, 550 U.S. at 570.  For this count to survive dismissal,

Plaintiff must provide factual averments that the <u>Yahyas</u> participated in her recruitment and

transport to the U.S., not just that they knew those who did.  *Id.*  Under the facts alleged, Ms.

Bibi offers nothing more than speculation ("authorized agents") and legal conclusions

("conspiracy" and "defraud") to connect the Yahyas to her being brought to the U.S.; her own

allegations specify that she dealt solely with the Rahmans.  No facts have been pled that would

support Count I's allegations against the Yahyas. Merely reciting the statutory language of §

1590 is insufficient to create a sustainable claim.  *Mallela v. Cogent Infotech Corp.*, 2020 U.S.

Dist. LEXIS 87668 at *5-6 (W.D.Pa. May 19, 2020).  There can be no trafficking claim where

Plaintiff has failed to specify acts by a particular defendant to recruit the Plaintiff.  *Mojsilovic v.*

*Okla. ex rel. Bd. of Regents*, 2015 U.S. Dist. LEXIS 44112 at *10-11 (W.D.Okla. April 3, 2015).

A person does not become liable for another defendant's trafficking acts simply because the

Plaintiff alleges that the person "knew" about the Defendant's acts.  *Martinez-Rodriguez*, 2017

U.S. Dist. LEXIS 150432 at *9-10; *cf Noble v. Weinstein*, 335 F.Supp.3d 504, 524 (S.D.N.Y.

2018) (liability for "trafficking" does not include those "who turn a blind eye" to the trafficking

activities of others, even when they ultimately benefit from the activity, as analyzed under §

1591(a)(2)).  Simply regurgitating a forced labor claim, without a distinct allegation of recruitment, will not support a trafficking claim under § 1590.  *Lopez v. Walker*, 2019 U.S. Dist. LEXIS 31133 at *27-28 (E.D.Tenn. Feb. 5, 2019).  No factual allegations of the Yahya's involvement in trafficking via participation in Ms. Bibi's recruitment have been pled, and Count I against them must be dismissed.

### b.   Count II (Forced Labor in Violation of 18 U.S.C. § 1589).

Count II also fails to identify specific acts by the Yahyas that could support the assertion that "defendants" (again, generically) "knowingly provided and obtained Ms. Bibi's forced labor, to their financial benefit, by force, threats of force, serious harm, and threatened abuse of legal process, all in violation of 18 U.S.C. § 1589."  Compl. ¶ 79.  *See Saiyed*, 2020 U.S. Dist. LEXIS 234234 at *11-12 (generalized allegations against "Defendants" collectively cannot state a § 1589 violation).  The Complaint is devoid of any allegation of force, threatened force, or serious harm by either Yahya against Ms. Bibi.  The only mention of any physical act whatsoever is an allegation that the Yahyas' pre-teen son struck Ms. Bibi twice in the course of five years, for which he was scolded by Mr. Yahya.  Compl. ¶ 38. That does not remotely come close to serious harm.

The only allegation that theoretically might fall within § 1589 is the assertion "that Ms. Yahya had told her that [Ms. Bibi] would be thrown in jail were she to complain.  From what Ms. Yahya told her, she understood that she had overstayed the stay permitted by her visa, and feared the possible consequences of that infraction."  Compl. ¶ 44.  "[Ms. Bibi] also feared legal difficulties, including arrest, if she left her position, as defendants advised her."  *Id.* ¶ 41.  "Ms. Yahya regularly told Ms. Bibi that because Ms. Bibi's visa had expired, she would get into difficulties with the police and go to jail, whereas the defendants would be fine because they had

money and could hire lawyers." *Id.* ¶ 49.  The Complaint also alleges that Mrs. Yahya made a similar threat to Ms. Bibi's husband that she could be arrested for overstaying her visa.  *Id.* ¶ 52.[5]

Even if these allegations could sustain a claim against Mrs. Yahya for "threatened abuse of legal process" under § 1589, they make no allegation of such threats by Mr. Yahya.  One adult family member cannot be held liable simply for being related to another family member who ostensibly violates § 1589, or is present for such violations.  *See, e.g.*, *Shuvalova v. Cunningham*, 2010 U.S. Dist. LEXIS 135502 at *9-10 (N.D.Cal. Dec. 22, 2010) ("very large" adult son of alleged § 1589 perpetrator could not be held liable merely because his "physical presence reminded plaintiffs that they could not escape"); *see also Jabaqat v. Lombardi*, 2015 U.S. Dist. LEXIS 178762 at *9-10 (S.D.Miss. Jan. 30, 2015) (in the absence of specific allegations, one defendant cannot be held vicariously liable for another defendant's purported violation of § 1589).  Accordingly, no viable § 1589 claim has been pled against Mr. Yahya.

With respect to the allegation that Mrs. Yahya told Ms. Bibi that she could be arrested or jailed for overstaying her visa, whether that allegation states a § 1589 claim depends entirely on whether or not the assertion was <u>false</u>.  As the Fourth Circuit held in *Muchira*, courts "must distinguish between improper threats and coercion and permissible warnings of adverse but legitimate consequences" of a defendant's informing a plaintiff of the potential consequences of the plaintiff's visa status.  850 F.3d at 624 (cleaned up).  A defendant's correct statement of law about a plaintiff's visa status cannot be a "threat" under § 1589, even if it causes the plaintiff fear, and influences her to stay with the employer.  *Martinez-Rodriguez*, 391 F.Supp.3d at 995 n.4.  For a sustainable § 1589 claim to be made against Mrs. Yahya, Plaintiff Bibi must plead facts that would make Mrs. Yahya's purported statement about Ms. Bibi's immigration status

---

[5] A perplexing aspect of Ms. Bibi's Complaint is her claimed desire since 2015 to leave the U.S. and return to her family in Pakistan.  Compl. ¶¶ 49, 63.  And yet, despite having purportedly "escaped" the Defendants in December 2018, Ms. Yahya is still here of her own free will.  *Id.* ¶¶ 2, 75.

false.  In other words, Ms. Bibi must plead facts demonstrating that she could legally stay in the

U.S. on her visa, and that Mrs. Yahya was coercing her with false information.  *Saraswat v.*

*Business Integra, Inc.*, 2019 U.S. Dist. LEXIS 70054 at *22-25 (E.D.N.Y. April 25, 2019), *aff'd*

799 Fed.Appx. 85 (2nd Cir. 2020).

### c.   Count III (Unlawful Confiscation of Travel Documents in Violation of 18 U.S.C. § 1592(a)).

The Complaint alleges that Ms. Rahman "immediately confiscated Ms. Bibi's passport

and gave it to the Yahyas, who hid it from Ms. Bibi. Ms. Bibi did not see the passport again for

some years."  Compl. ¶ 25.  It also asserts that while living at the Yahya house in Leesburg,

"[Ms. Bibi] retrieved her passport, which she had previously discovered while cleaning the

house, but not taken, for fear of being found out."  *Id.* ¶ 73.  These allegations, however, do not

make out a violation of § 1592(a), because, as the Fourth Circuit has held, a plaintiff must

factually plead that the passport was withheld by defendants without the plaintiff's permission.

*Muchira*, 850 F.3d at 623-24 (holding no § 1592(a) violation where, even though plaintiff

claimed defendants kept her passport, she never asked defendants to maintain possession of the

passport herself).  Ms. Bibi has not asserted that she ever told the Yahyas that she wanted the

passport, and thus cannot sustain a claim that they unlawfully withheld it from her.  *Id.*

Moreover, as explained above in Part III.A, *supra*, even if a withholding of travel documents is

properly pled, there can still be no § 1592(a) violation where there is no underlying intent by a

defendant to commit forced labor or involuntary servitude, which is particularly true where the

plaintiff admits she entered into the employment relationship voluntarily.  *See, e.g, Mallela*, 2020

U.S. Dist. LEXIS 87668 at *16, citing *United States v. Alstatt*, 858 F.Supp.2d. 1032, 1047

(D.Neb. 2012).  The Complaint does not plead facts sufficient to support a claim for the

occurrence of, or intent to engage in, forced labor (§ 1589) or involuntary servitude (§ 1584), and hence, no claim of confiscating Ms. Bibi's travel documents can sustain a § 1592(a) claim.

### d. Count V (Benefitting Financially from Trafficking in Violation of 18 U.S.C. § 1593A).

Section 1593A does not create a civil cause of action distinct from § 1595(a), and Count V must be dismissed for failing to state a legally cognizable cause of action. *Stein v. World-Wide Plumbing Supply, Inc.*, 71 F.Supp.3d 320, 329 (E.D.N.Y. 2014). However, as previously explained in Part III.A, *supra,* even if a cause of action did exist, it would still fail, as with the other derivative counts, because Ms. Bibi has not stated an underlying claim for forced labor or involuntary servitude. *See, e.g., McCollough v. City of Montgomery*, 2020 U.S. Dist. LEXIS 118754 at *28 (M.D.Ala. July 7, 2020); *Muchira v. Al-Rawaf*, 2015 U.S. Dist. LEXIS 49806 at *2, 27-40 (E.D.Va. April 15, 2015).

### e. Count VI (Conspiracy to Violate the Trafficking Victims Protection Act).

Merely alleging in conclusory fashion, as Plaintiff Bibi does here, that "each [D]efendant conspired with the other [D]efendants to violate the [TVPA] . . . and each [D]efendant committed the overt acts in furtherance of this conspiracy" is insufficient to state facts that would make out a conspiracy in violation of § 1594(b). *Cabusao v. Lombardi*, 2015 U.S. Dist. LEXIS 185609 at *11-12 (S.D.Miss. Jan. 30, 2015).

"For there to have been a conspiracy, there must have been an agreement to violate the prohibition[] [of] . . . forced labor." *Stein*, 71 F.Supp.3d at 330 (dismissing forced labor conspiracy claim while sustaining forced labor claim). Ms. Bibi has failed to plead the existence of an agreement among the defendants to engage in forced labor. "An agreement consists of a meeting of the minds, in other words, two people have to engage in the act of agreeing for there to be an agreement for conspiracy purposes." *Id.* (cleaned up). As previously noted, the

Complaint, merely states various acts by some of the Defendants that Ms. Bibi subjectively interprets as putting her into "forced labor." Even if such statements could be construed as alleging that some of the Defendants "participated in violation of the forced labor prohibition, it does not imply that there was some act of agreement between any of them." *Id.* Accordingly, Plaintiff Bibi's Count VI conspiracy claim fails. *See also, e.g., United States v. McMillan*, 813 Fed.Appx. 846 (4th Cir. 2020) (overturning one defendant's criminal conviction for § 1594(b) trafficking conspiracy where there was lack of evidence suggesting an agreement between him and other defendants who had engaged in trafficking conduct). Finally, as previously discussed, in the absence of sustainable claims for the underlying forced labor or involuntary servitude, there cannot be a sustainable claim to conspire to accomplish that result. *See, e.g., Alstatt*, 858 F.Supp.2d at 1045.

### B.  The Complaint Fails to Sufficiently Plead a Fair Labor Standards Act Violation.

#### 1. Section 206(f) of the FLSA is Facially Unconstitutional for Seeking to Regulate Domestic Workers Not in Interstate Commerce, & As Applied to the Entirely Local Conduct of the Yahya Defendants Here.

In 1974, Congress amended the FLSA to cover domestic servants. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007). "Congress specifically found the employment of persons in domestic service in households affects commerce" and thus expressly intended for the FLSA to cover such workers. *Cardenas v. Aragon Towers Condo. Ass'n*, 451 Fed.Appx. 898, 900 n.2 (11th Cir. 2012), citing 29 U.S.C. § 206(f) and 29 C.F.R. § 552.99. The Yahya Defendants challenge the constitutionality of the FLSA's application to domestic servants under § 206(f), both facially and as applied, because the employment relationship alleged by Ms. Bibi occurred exclusively at their home in Leesburg, Virginia and involved no interstate commerce, and is too attenuated from interstate commerce for Congress to constitutionally regulate it.

17

Congress cannot, *ipse dixit*, transform purely local commerce within a state–which the Constitution denies it the power to regulate–into interstate commerce that does fall within its regulatory powers.  The correct analysis of whether "interstate commerce" is actually occurring under the FLSA is that provided by the Fourth Circuit in *Wirtz v. Modern Trashmoval, Inc.*, holding that, "in determining whether employees are engaged in commerce . . . the test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." 323 F.2d 451, 457 (1963) (cleaned up). *See also Mitchell v. C. W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). ("[W]hether an employee is engaged 'in commerce' within the meaning of the ... [FLSA] is determined by practical considerations, not by technical conceptions."); *Ergasho v. Global Dynamic Transportation*, 680 Fed.Appx. 161 (4th Cir. 2017) (affirming district court ruling that employees delivering donuts to stores that were part of a national franchise was "insufficient to show that employees were engaged in interstate commerce, as opposed to merely affecting it.").  Nothing in the Complaint suggests any interstate commerce between Ms. Bibi and the Yahyas, and the FLSA is therefore constitutionally inapplicable to that relationship.

**2.  All But One Year of Ms. Bibi's FLSA Wage Claim is Time-Barred.**

The FLSA's statute of limitations is two years, or three years if the violation is willful, as Plaintiff Bibi alleges here.  29 U.S.C. § 255(a).  An FLSA cause of action is potentially a repeated one, but not a continuing one, which arises and accrues at the end of each workday in which a violation of the statute takes place.  *See Henchy v. City of Absecon*, 148 F.Supp.2d 435, 438 (D.N.J. 2001).  Plaintiff has, at most, stated an FLSA claim for one year of wages.  She filed her Complaint on December 3, 2020, meaning that any claims for willful violation of the FLSA

would extend back in time only to December 3, 2017. Complaint ¶ 73 avers that the final day of her employment by any Defendant was December 7, 2018 – meaning exactly one year and four days of wages would not be time-barred.

### 3. Ms. Bibi Has Failed to Specify How Her Work Hours Violate the FLSA.

A claim for failure to pay minimum wage, as Count VII(A) avers, requires the Plaintiff to allege facts plausibly giving rise to a finding that the Plaintiff was an employee of a Defendant engaged in interstate commerce within a particular workweek, and that the Defendant failed to pay wages of at least the then-minimum statutory rate during that week. 29 U.S.C. § 206(a); *see also Jones v. Casey Gen. Stores*, 528 F.Supp.2d 1094, 1102 (D. Iowa 2008); *Landers v. Quality Communs. Inc.*, 2015 U.S. App. LEXIS 1290 at *17 (9th Cir. Jan. 26, 2015).

Plaintiff Bibi's Complaint nowhere specifies how many hours she worked in any given week, or the average number of hours she worked per week, claiming only that she was "on call 24 hours a day for over five years," Compl. ¶ 27(a), and some days worked up to 20 hours per day. *Id.* ¶ 30. Given the recentness of the potential period of liability, Ms. Bibi should be able to be able to at least approximate how many hours she believes she worked for that final year, and how much she was paid during that time period, rather than make vague generalizations about the entire five-year employment history. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (an overtime claim requires a plaintiff to allege sufficient facts to support a reasonable inference that she worked more than 40 hours in at least one workweek and failed to receive overtime compensation for *those* hours). It is not sufficient for Ms. Bibi to simply assert, writ large, that her employers violated her FLSA rights; she must set out factual averments with at least enough specificity to make that conclusion plausible. *Acosta v. Ararat Imp. & Exp. Co.*, 378 F.Supp.3d 443, 446-51 (E.D.N.C. 2019); *see also Ramnarine v. Rainbow Child Dev. Ctr.*,

2018 U.S. Dist. LEXIS 39049 at *6-11 (D.Md. March 9, 2019), citing *Davis v. Abington Mem. Hosp.*, 765 F.3d 226, 243 (3d Cir. 2014).

### 4.    The Complaint Fails to Identify Which Employer(s) Committed Identifiable FLSA Violations.

Count VII of the Complaint addresses the "Defendants" collectively for purposes of the FLSA, but does not distinguish among them.  Compl. ¶ 84.  For this legal conclusion to be true, the Court would have to find a joint employment to be present.  Such a joint employment, however, is contrary to the facts set out by Plaintiff herself.

Joint employment requires a finding that two or more parties "shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the Plaintiff's work," and if so whether the combined influence renders the worker an employee and not an independent contractor.  *Hall*, 846 F.3d at 767.  The Fourth Circuit has identified a non-exhaustive six-factor test for putative joint employment: (1) whether the employers jointly determine, share, or allocate the ability to control the worker, (2) whether the employers jointly hire or fire or modify the terms of the worker's employment, (3) the degree of permanency of the relationship between the employers, (4) whether one employer controls or is under common control with the other, (5) whether the work is performed in premises owned by the other employer, and (6) whether the employers jointly allocate employment responsibilities such as payroll or providing work materials.  *Id.* at 769-70.

Plaintiff avers that she entered into a written employment contract in July 2013 with Defendant Mr. Rahman to provide live-in domestic services for his family in the U.S., and that she later entered into an oral contract with Defendant Mrs. Yahya in November 2014 to be paid $150/month to assist in caring for Mrs. Yahya's infant son.  Plaintiff Bibi has pled that she was a live-in domestic worker caring for, *inter alia*, the Yahya home, the Yahya children, and the

Mother of Defendants Mrs. Rahman and Mr. Yahya, while taking direction varyingly from all four Defendants at different times on different matters.  Of the elements in the six factor *Hall* test, Plaintiff only touches on the permanency of the relationship, in stating the Defendant Mrs. Rahman and Mr. Yahya to be siblings with a mutual interest in their Mother's care.  The Complaint fails to set out (even though Ms. Bibi had two separate contracts with two distinct Defendants, and had different relationships with each of the four Defendants) to whom she was providing services and on what basis.  No facts set forth a scheme of overlapping control of Plaintiff's work or how she believes the separate Defendants are nonetheless a single employer.  Indeed, the Complaint makes no specific allegations whatsoever about Mr. Yahya–other than being married to Mrs. Yahya–suggesting that he had any control over Ms. Bibi's working conditions or salary that could suggest that he was a joint employer at all.  *See, e.g. Kisu Seo v. H Mart Inc.*, 2020 U.S. Dist. LEXIS 169554 at *13-14 (N.D.Ill. Sept. 16, 2020) (merely being associated, such as by familial ties, with an employer does not make another party a joint employer); *Copantitla v. Fiskardo Estiatorio, Inc.,* F.Supp.2d 253, 313-14 (S.D.N.Y. 2011) (even a family member acting as the agent of the employing family member does not become a joint employer when that person is not making the controlling decisions for the employee's work conditions).

Even as there are no facts supporting an allegation of joint employment, there are also insufficient facts to set out what claim Plaintiff is making against each Defendant.  Plaintiff does not allege what dates she worked for each Defendant (other than noting that a separate contractual relationship with Mrs. Yahya for infant care began in November 2014), or even how much Plaintiff claims to have worked for each Defendant, whether in periods not time-barred or otherwise.  In fact, Complaint ¶ 70 avers that "[D]efendants were Ms. Bibi's employers and she

was their employee within the meaning of the FLSA," and "her total compensation was dramatically less than what she was entitled to receive even as a matter of the federal minimum wage of $7.25/hour, to say nothing of her contract," *id.* ¶ 67, without indicating which Defendant was responsible for making those payments at any given time in question, for what service, and under which contract.  Just as *Jones* required that a Complaint specify for each Plaintiff at least the approximate hours for which a minimum wage claim was brought, *see* 538 F.Supp.2d at 1113, so Plaintiff Bibi's Complaint should have at least identified for each Defendant the approximate weeks, hours, and basis of the obligation for those weeks and hours to be charged against them, respectively.

Further, Ms. Bibi concedes that lodging, food, and medical care were part of her written employment contract with Defendant Mr. Rahman.  An employer must be credited under the FLSA for the reasonable value of lodging, food, and facilities provided to the employee.  *See* 29 U.S.C. § 203(m). Accordingly, the identity of the alleged employer at a particular time is more than just a question of adequately alleging liability, it gets at the nature of a party's defenses, and what facts, witnesses, and documents should be gathered and disclosed to support that defense.

Because the Complaint does not present a claim for the one year of wages not time-barred, and fails to set forth facts supporting a claim of joint employment, Plaintiff has failed to allege facts that plausibly entitle her to relief under the FLSA against any Defendant, and this Count should be dismissed.

### C.  All But One Year of Plaintiff's Possible Contract Claim With the Yahya

**Defendants is Time-Barred, and the Complaint Fails to Specify the Material Terms of any Such Contract and How it was Breached.**

While Ms. Bibi's Complaint loosely alleges that the "defendants" (generically) "failed to pay [her] in accordance with her contract calling for payment of 40 hours/week at $15/hour and time-and-a-half overtime," Compl. ¶ 86, the Complaint alleges no such contract with all of the Defendants.  The July 2, 2013 contract discussed at length in the Complaint (attached as Ex. B) is solely between Ms. Bibi and Defendant Mir Shakil-ur-Rahman.  *See* Compl. ¶¶ 14-16.  That is the contract Ms. Bibi seeks to enforce here, *see* Compl. ¶ 28, and the Yahya Defendants are not a party to that contract.  *See* Ex. B.  "Only a person who is a party to a contract may sue and be sued for an alleged breach of that contract."  *Ragone v. Waldvogel*, 54 Va.Cir. 581, 583 (Roanoke Cnty. 2001). A breach of contract action cannot be brought against someone who is not a party to the contract.  *See DiPrete v. 950 Fairview Street, LLC*, 2016 U.S. Dist. LEXIS 145922 at *5-12 (W.D.Va. Oct. 21, 2016).  Hence, the only person who could possibly be liable under the written contract specified in the Complaint is its signatory.

Moreover, because the statute of limitations for bringing a breach of contract action on a written contract is five years, Ms. Bibi can obtain contract damages only for the period from December 3, 2015 (five years before the date her Complaint was filed) to December 7, 2018, the date she asserts to have terminated the contract by leaving the Yahya household and ceasing to perform her contractual duties. Compl. ¶ 73.  *See Manotas v. Ocwen Loan Servicing, LLC*, 794 Fed.Appx. 259, 264 (4th Cir. 2019), citing Va. Code. § 8.01-246(2) (five year limitations period for bringing a breach claim for a written contract).

Ms. Bibi does, however, allege an oral contract with the Yahya Defendants purportedly made in November 2014, to pay her $150/month to care for their infant son.  Compl. ¶ 59.  The limitations period for an oral contract in Virginia is three years. *See Ranney v. Nelson*, 176

Fed.Appx. 405, 408 (4th Cir. 2006), citing Va. Code. § 8.01-246(4) (three year limitations period for bringing a breach claim for an oral contract). Three years prior to the filing of the Complaint would be December 3, 2017. Even if one was to accept the premise that an oral agreement was reached between the Yahya Defendants and Ms. Bibi to care for the infant in November 2014, it is impossible to tell from the Complaint what contract, if any, existed between them during the period from December 3, 2017 and December 7, 2018. For instance, Ms. Bibi asserts that Ms. Yahya lowered the pay amount in March 2018, based on the rationale that the child, now older, required less care. Compl. ¶ 60. The Complaint does not state, however, whether Ms. Bibi agreed to that reduction in pay, or whether her workload actually decreased. To constitute an enforceable contract, an agreement must contain all of the material terms and be sufficiently definite so that the intent of the parties can be reasonably ascertained. *Smith v. Farrell*, 199 Va. 121, 127-28 (1957). The Complaint fails to do so here.

Confusingly, Ms. Bibi asserts that she agreed to be paid $150/month by the Yahyas, but then states that her husband was sent her pay in rupees, without noting the exchange rate for the months in question. Nor does Ms. Bibi ever explicitly state in her Complaint that she did not agree for her pay to be sent to her husband, that he could not transmit the funds to her, or that she otherwise lacked access to the funds allegedly being remitted to her husband. Without further detail, it is impossible for the Yahya Defendants to ascertain whether they might owe Ms. Bibi anything, and if so, how much. *Cf Bad Co. v. Expeditors Int'l of Wash., Inc.*, 2017 U.S. Dist. LEXIS 73069 at *11 (E.D.Va. May 4, 2017) (granting motion for more definite statement where complaint failed to detail basis of alleged contractual damages). At most, even assuming, *arguendo*, that Ms. Bibi had an oral contract to provide services with the Yahyas for their infant for $150/month, and that she was never paid because she couldn't obtain the funds from her

husband and that she had not authorized the payments to him, such damages, by her own admission, would be $1800.00 for the twelve-month period at issue.

### D. No Quantum Meruit Claim Can Exist Where Plaintiff Has Pled an Express Contract for the Same Conduct.

"[R]ecovery under the theory of quantum meruit may only be had upon the basis of an implied contract." *In re Silvus*, 329 B.R. 193, 218 (Bankr. E.D.Va. 2005). "An implied contract and an express one covering the identical subject-matter cannot exist at the same time. If the latter exists, the former is precluded." *Federal Sav. & Loan Ins. Corp. v. Quality Hotels & Resorts, Inc.*, 1991 U.S.App. LEXIS 3887 at *10 (4th Cir. 1991). Where a party has an express written contract, "the law will not imply a contract when the suit is upon a contract in writing." *Layton v. MMM Design Group*, 32 Fed.Appx. 677, 682 (4th Cir. April 2, 2002), citing *Royer v. Bd. of Cnty. Supervisors*, 176 Va. 268, 280 (1940) ("where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof"). Moreover, "[w]hen the parties have either a written or oral agreement on a given subject, they cannot also have an implied in fact agreement concerning the same subject matter." *Layton*, 32 Fed.Appx. at 682.

Here, as discussed in Part III.C., *supra*, Plaintiff Bibi alleges an express written contract with Defendant Mr. Rahman, and an express oral agreement with the Yahya Defendants. And, as befits those allegations, Ms. Bibi has set forth as Count VIII(A) her claim for "Breach of Contract." Compl. ¶ 86. Having both factually alleged breaches of an express written contract and a different express oral contract, and having brought a legal claim for their purported breach, Plaintiff Bibi is precluded under Virginia law from also bringing a claim for breach of implied contract. *See, e.g., Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 502 (1918) ("It is only in the <u>absence of an express</u> or of an enforceable <u>contract</u> between parties, that the law (whether

at law or in equity) will, from circumstances, imply a contract between them.") (emphasis

added); *accord, OMNI Constr. Inc. v. Fairfax Square Assocs. II*, 25 Va.Cir. 252, 253 (Fairfax

Cnty. 1991).  Accordingly, Count VIII for "Quantum Meruit" is barred by law, and should be

dismissed with prejudice.  Even if Ms. Bibi had alleged a viable quantum meruit claim against

the Yahyas, it would be limited (as explained in Part III.C, *supra*), to the period from December

3, 2017 through December 7, 2018, because of Virginia's three-year limitations period.  *See*

*Heritage Storage & Disposal, LLC v. VSE Corp.*, 2017 U.S. Dist. LEXIS 9994 at *33 (E.D.Va.

Jan. 24, 2017), citing Va. Code. § 8.01-246(4) (three year limitations period for bringing a

quantum meruit claim).

### E.  Ms. Bibi's Pleading of an Express Contract Precludes Her Unjust Enrichment Claim.

The same limitations period for an oral contract applies to any unjust enrichment claim

Ms. Bibi might have, constraining her damages to those accrued from December 3, 2017 to

December 7, 2018.  *See East-West LLC v. Rahman*, 873 F.Supp.2d 721, 730 (E.D.Va. 2012)

(noting that the unjust enrichment limitations period in Virginia is three years). Likewise, in

Virginia, "unjust enrichment claims arise only where there is no express contract." *Lane Constr.*

*Corp. v. Brown & Root, Inc.*, 29 F.Supp.2d 707, 727 (E.D.Va. 1998).  Plaintiff Bibi's Complaint

candidly admits that she had express contracts for her work with both Defendant Mr. Rahman (in

writing), and orally with the Yahya Defendants.  *See, e.g.,* Compl. ¶¶ 14-16, 28 and 59.

Accordingly, she can bring no unjust enrichment claim against the Yahya Defendants.

### F.  Ms. Bibi Cannot Have Been Falsely Imprisoned When She Admits She Could

**Physically Leave the Yahya Home, and Repeatedly Did So.**

As with her previous counts, Plaintiff Bibi's claim for false imprisonment fails because she fails to specify which defendant engaged in which specific conduct that might constitute false imprisonment under Virginia law, and instead refers to Defendants collectively. However, by its terms, the Complaint fails to allege facts that might support a claim against any Defendant for false imprisonment. "Under Virginia law, false imprisonment is defined as the restraint of a person's liberty without sufficient cause. If a person is under a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment." *Zaklit v. Global Linguistic Solutions, LLC*, 53 F.Supp.3d 835, 846-47 (E.D.Va. 2014) (internal citation and quotations omitted). It is certainly true that withholding someone's passport <u>might</u> precipitate a claim for false imprisonment, but <u>only</u> where doing so physically restrained the individual from leaving the place where she claims to be detained. *Id.* In *Zaklit*, the defendant's withholding of a passport was found sufficient to state a false imprisonment claim because the plaintiffs alleged that they were unable to leave an Army base for "any reason," including medical appointments, personal time, and emergency matters. *Id.* Here, by contrast, although Ms. Bibi asserts that her passport was "confiscated" (which she does not claim to have ever requested be returned, or that such request was refused), she admits leaving the Yahya home to see doctors, dentists, attend church, and visit the park. Her Complaint does not make out a claim for false imprisonment.

**G.  The Conspiracy Claim Fails for Lack of Any Supporting Factual Allegations.**

The Complaint makes an utterly empty claim of Conspiracy in Count XI, stating, in its entirety, "By their actions set forth above, [D]efendants conspired among themselves to cause the false imprisonment of Ms. Bibi." Compl. ¶ 90. As noted in Part III.E., *supra*, the Complaint

does not state a claim for false imprisonment, and thus cannot state a claim for conspiracy to accomplish that result.  Moreover, "mere conclusory language is insufficient to state a cause of action for civil conspiracy under Virginia law." *Lewis v. Gupta*, 54 F.Supp.2d 611, 618 (E.D.Va. 1999) (cleaned up), citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985).  Lacking any factual averment of an agreement by either Mr. or Mrs. Yahya with anyone else to accomplish her imprisonment, this conspiracy claim is facially deficient.  *See also, e.g, Connor v. Real Title Corp.*, 165 F.2d 291, 294 (4th Cir. 1947) (dismissing as vague and generalized a complaint's assertion of "a vicious conspiracy and collaboration" between three defendants). This common law conspiracy claim must be dismissed.

## IV.    Conclusion

At its core, Ms. Bibi's suit is premised on her being from a lower Pakistani social class than the Defendants, *see, e.g.* Compl. ¶¶ 1-2, 43, and, as she described it, "lacked[ing] the requisite language ability, practical skills, financial wherewithal, and personal contacts to act on her own behalf" in the United States. Compl. ¶ 41.  From these purported facts, Ms. Bibi seeks to promote the claim that she was "trafficked."  The problem with this theory is that all of those things were true <u>when she voluntarily agreed to come to the U.S. to work for the Rahman family *while she was still in Pakistan*</u>.  No one forced Ms. Bibi to enter into this agreement, or to stay in it.  She admits she left her husband in Pakistan "to provide her family with much needed funds." Compl. ¶ 13.  There is no allegation that anyone kept her from leaving the suburban Yahya home in Leesburg.  She admits she had ready access to a phone, spoke to her husband every day (as well as other relatives), and was able to leave the Yahya home without impediment the first time she tried.

As the Fourth Circuit explained in *Muchira*:

> [T]he forced labor provisions of the TVPA are not intended to redress every bad employment relationship involving immigrants, or to punish immigrants for adhering to cultural rules and restrictions that many in this country would refuse to abide by. They are intended to effectuate the constitutional prohibitions against slavery and involuntary servitude, by criminalizing the act of coercing persons into providing labor and services against their will and by providing a civil remedy to the victims of such actions.

850 F.3d at 625.  Ms. Bibi has failed to plead allegations "upon which a jury could reasonably conclude that the [Defendants] knowingly forced or coerced her to come to the United States, or to remain in their employ against her will, by means of serious psychological harm or abuse of law or legal process, when she otherwise would have left and returned to her home country."  *Id.*

With an amended complaint containing more specific allegations, Ms. Bibi might be able to produce legally cognizable FLSA and contract claims against the Yahya Defendants for the one-year period from December 2017 through December 2018.  The rest of her claims, however, are beyond repair, and should be dismissed with prejudice.

Respectfully Submitted,

Shoaib Nooruddin Yahya & Ayesha Yahya

By counsel:
Juris Day, PLLC

_____/s/_____
Earl N. "Trey" Mayfield, III, VSB # 41691
tmayfield@jurisday.com
10521 Judicial Drive, Suite 200
Fairfax, VA 22030
Voice: (703) 268-5600
Facsimile: (703) 268-5602
*Counsel for Defendants*
*Shoaib Nooruddin Yahya and Ayesha Yahya*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2021, I caused the foregoing document to be delivered via ECF to:

Victor M. Glasberg, Esq.
Glasberg & Associates
121 S. Columbus St.
Alexandria, VA 22314
Tel. (703) 684-1100
Fax (703) 684-1104
vmg@robinhoodesq.com

Matthew Sutter, Esq.
Sutter & Terpak, PLLC
7540A Little River Turnpike, First Floor
Annandale, VA 22003
Tel. (703) 256-1800
Fax (703) 991-6116
matt@sutterandterpak.com

Alexandra Lydon, Esq.
Legal Services of Northern Virginia
100 N. Pitt Street, #307
Alexandria, VA 22314
Tel. (703) 504-9155
Fax (571) 386-0641
alydon@lsnv.org


_____/s/_____
Trey Mayfield