UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| REHANA BIBI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:20-cv-1478 (LMB/MSN) |
| | ) | |
| MIR SHAKIL-UR-RAHMAN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

<u>Memorandum in Opposition to Motion for Discovery and Sanctions</u>

Relying on a single, un-cross-examined, unsworn, double-hearsay statement the contents of which have been flatly denied by the principal person quoted therein, defendants Shoaib and Ayesha Yahya ask this court for an order:

* "that their counsel be permitted to take immediate custody of any phone, tablet, computer, or electronic device [plaintiff Rehana] Bibi has," and

* that Ms. Bibi "be ordered to identify all communications mediums she uses and the password information to access these mediums."

To this request for relief, and based on no more than the referenced statement, the Yahyas add that the court should now proceed to a hearing "to determine the appropriate sanction against Plaintiff Bibi and her husband Riaz Masih."[1]  All this proposed relief is breathtakingly over-broad and embarrassingly irregular as well as being unjustified, and should be denied.

---

[1]The Yahyas also seek an order directing that Ms. Bibi not destroy, alter, or delete any communications under her control.  Ms. Bibi, who does not object to such an order addressed to all parties, was directed to this effect by her counsel before suit was filed.  Presumably the Yahyas understand that this requirement applies to themselves, with or without court order.

Doubtless, this court has broad authority to take steps to ensure the fair and proper litigation of the cases before it.  It is also clear that the allegations set forth in the Declaration of Faisal Masih charge Ms. Bibi's husband, Riaz Masih, with misconduct that would trouble any court, were the allegations true.  But what matters is not what lawyers write or out-of-court witnesses recount, but what reasonable inferences may be drawn from admissible evidence, and what the law permits as relief when relief is indicated.  The latter considerations doom the Yahyas' motion at bar.

A.     <u>The Court Lacks Evidence Sufficient to Infer Fraud or Crime</u>

     1.     The Court Lacks Evidence Sufficient to
               <u>Implicate Riaz Masih in Fraud or Crime</u>

Riaz Masih, Ms. Bibi's husband, has filed his own declaration categorically denying the allegations laid at his door by his wife's cousin.  Exhibit 1.   While the court cannot, at this stage, assess who is telling the truth in the he-said-he-said between Riaz Masih and Faisal Masih, the following things are clear from Faisal's statement alone:[2]

\*     Faisal claims, not that he in fact has "information on [his] computer that would help Auntie Shaheena (Ms. Rahman)[3]," but that Riaz allegedly "thinks I have"  – something Riaz flatly denies. Exhibit 1, ¶4; *see also* Exhibit 2, ¶¶4-5.

---

[2]This is a apart from the fact that Faisal Masih's statement is insufficient under 28 U.S.C. §1746(1) as an un-notarized declaration executed outside of this country: a matter for the court to weigh as it sees fit.

[3]In Pakistan, "Auntie" is a title of respect, not limited to actual aunts.

\* If Faisal does in fact have "information on [his] computer that would help Auntie Shaheena (Ms. Rahman)," he has not produced it in support of his inflammatory declaration, despite his pledge "to tell only the truth and . . .  testify in court if necessary."  If this information exists, why it has not been produced together with Faisal's statement is a mystery.

\* While Faisal asserts he told Riaz he would not lie, Faisal does not claim that Riaz asked him to lie, or that Riaz said anything that was untrue.  Everyone agrees that no one should lie.

\* While Faisal asserts he was threatened with dire consequences "to force [him] to cooperate with Mrs. Bibi's case," Ms. Bibi and her counsel stand in ignorance of anything Faisal Riaz could do or say that would assist her in this lawsuit.  He is not a proposed witness in the case.  Ms. Bibi hardly communicated with him and did not communicate with him at all about her lawsuit. Exhibit 2, ¶¶2-5 . Riaz is unaware of any "information" or documentation he (Riaz) may have that might bear on his wife's claims, other than, possibly, a copy of the complaint and exhibits thereto.   Exhibit 1, ¶ 4.  Faisal's cooperation has not been, will not be, and need not be, solicited by Ms. Bibi or her counsel.  At best, given his recent statement, he may possibly be deposed as a potentially hostile loose cannon.  Other than that, he has no role to play in this suit.  For what reason he should be threatened if he did not "cooperate" is yet another mystery.

The bottom line is that the Yahyas' invocation of crime or fraud as grounds for their requested relief, Def. Mem. at 2, is based on an unsworn, un-cross-examined, double-hearsay,

statement leaving more questions unanswered than answered, even before its impeachment by the declarations filed herewith by Riaz Masih and Ms. Bibi.

2.     The Court Lacks Evidence Sufficient to
       Implicate Ms. Bibi in Fraud or Crime

Even less have the Yahyas implicated Ms. Bibi – the plaintiff – in any wrongdoing.

Without regard to the evidentiary status of Faisal Masih's statement, *it does not implicate Ms. Bibi in any way, only her husband.* It is fair to assume that Riaz Masih would want to assist his wife in her lawsuit against the Rahmans. But such an assumption does not imply Riaz's willingness to engage in unlawful actions in aid of Ms. Bibi's case. Even less does it imply Ms. Bibi's awareness of or complicity in what Riaz is accused of having done. There is nothing before the court to suggest the contrary, and Faisal's pregnant silence on Ms. Bibi's hypothetical complicity speaks volumes.[4]

The Yahyas express chagrin at what Riaz Masih has allegedly said. But the remedy they seek from this Court is from his wife, independently living and independently litigating 7,230 miles away from the alleged crime or fraud to which they have not even tried to tie her. Far more than what the Yahyas have presented is required to show Ms. Bibi's apparent crime or fraud sufficient to pierce the privacy and spousal interests here at issue.

_____

[4]There is, on the contrary, much to suggest the extent to which Faisal Masih is beholden to his "Auntie Shaheena." Like his cousin Ms. Bibi and her husband, Faisal Masih is a man of modest education and means. Exhibit 2 ¶9. The imbalance of social and economic power between the players at issue is massive, and consequential. Notwithstanding – and unlike the Yahyas – Ms. Bibi does not undertake automatically to charge the Rahmans with responsibility for Faisal Masih's averments. People are capable of misbehaving on their own when they perceive it in their interest to do so.

No doubt, when marital communications "have to do with the commission of a crime in which both spouses are participants, the conversation does not fall within the marital privilege…." *United States. v. Parker*, 834 F.2d 408, 410 (4th Cir. 1987), *cert. denied*, 485 U.S. 938 (1988). "[M]ere allegations," however, are insufficient to breach the privilege. *In re Search of Info. Associated with "staceypomrenke@gmail.com"*, 2016 U.S. Dist. LEXIS 80881, at *10 (W.D. Va. June 21, 2016). What is required is "evidence of a spouse's complicity in the underlying, on-going criminal activity before the district court may admit testimony regarding confidential communications between the defendant and the spouse." *United States v. Bey,* 188 F.3d 1, 5 (1st Cir. 1999), noted in *Parker,* 834 F.2d at 412. The very cases cited by the Yahyas in support of their crime-fraud theory, Def.Mem. at 2-3, demonstrate their failure to present this Court with grounds sufficient to order the invasion of privacy and privilege they seek.

In *United States v. Parker*, 834 F.2d 408, 410 (4th Cir. 1987), *cert. denied*, 485 U.S. 938 (1988), where a woman was found to be "an active and voluntary participant in the kidnaping and alleged murder" by her husband, the Fourth Circuit permitted the admission of her testimony regarding statements made to her by her husband about his kidnaping plan.[5] In *United States v. Bey, supra,* defendants wife's "knowing acceptance of drug proceeds, her efforts to maintain [defendant]'s cover story for the benefit of his unsuspecting couriers, and her decision to act as a go-between when [defendant] needed additional funds . . . to conduct his criminal activity in

---

[5]"By her own admission, Mrs. Parker (1) accompanied appellant to an auto repair shop to obtain two shotgun shells he intended to use to kill Walters; (2) accompanied him to North Carolina to choose a place to murder Walters; ... (6) made sure Walters was dead after appellant beat him with a hammer; (7) helped appellant take Walters' body out of the house; (8) disposed of the bloody mattress; (9) helped clean up the blood stains in the back seat of the car; and (10) assisted in using acid to disfigure Walter's body to prevent identification of it." *Id*. at 412.

Jamaica" satisfied the court that she had become a joint participant in a drug conspiracy. *Id.* at 6.[6]
In *In re Search of Info.*, at *12, the government presented an F.B.I. affidavit demonstrating
"probable cause that the crimes of obstruction of justice and/or witness tampering and contempt
of court had been committed and probable cause that evidence of these crimes existed in . . .
electronically stored records."  In *United States v. Short*, 4 F.3d 475, 479 (7th Cir. 1993), the
defendant's wife, who testified under a grant of immunity from prosecution, had  participated in
various ways in a scheme of selling stolen cars to innocent buyers.  In *In re Sealed Grand Jury
Subpoenas,* 810 F.Supp.2d 788, 794 (W.D. Va. 2011), the court applied the crime-fraud
exception to the psychotherapist-patient privilege where the government represented that a
psychiatrist had unlawfully prescribed controlled substances and that evidence of those
violations was contained in the medical records of the named patients.

The Yahyas' itemization of allegedly supportive case law, Def.Mem. at 3, closes with *In
re: Grand Jury Proceedings* #5, 401 F.3d 247, 255 (4th Cir. 2005), a case involving the
proposed piercing of the attorney-client privilege.  Yet in that case,  the Fourth Circuit held that
the district court "abused its discretion in ordering the attorney to testify."

Even before the newly filed declarations of Ms. Bibi and her husband (Exhibits 1 and 2
filed herewith) are considered, then, the Yahya's own case law does not support drawing, from
Faisal Masih's statement, the inference that Ms. Bibi was complicit in the misbehavior alleged
against her husband some 7,230 miles away.  The Yahyas are free to depose Riaz Masih and

---

[6]This decision is notable as well for the court's holding that the defendant's wife's
admissions that she provided phone messages to him, wired food money to him in Jamaica, and
drove him to the bus station, "could be evidence of nothing more than the mundane incidents of
their marital relationship."   It was therefore not evidence of joint criminal activity.  *Id.*

thereafter act as they see fit.  But they have presented no grounds for this Court to order the astonishing invasion of Ms. Bibi's privacy they now seek.

    B.    <u>There is No Basis For An Uncabined Invasion of Ms. Bibi's Privacy</u>

Ms. Bibi respectfully submits that the problems with Faisal Masih's statement noted above doom the Yahyas' motion.  When discovery opens, the Yahyas will be free to depose all the persons of interest to them, and based on what they learn bring such matters as they see fit to the Court's attention, seeking whatever appropriate relief may be available based on the record.  But we are far from that here.  This case should proceed in the normal manner, presumably as soon as the Rahman defendants appear or default in several weeks.

Apart from being unjustified on the merits for the reasons set forth above, the Yahyas' proposal that this court order Ms. Bibi to hand over her electronic communications devices and passwords to defense counsel is unheard of and preposterous.  The Yahyas write as though there were not in existence an entire jurisprudence addressing discovery of electronically stored information ("ESI") under FED.R.CIV.P. 34(a)(1)(a). *See generally*, <https://legal.thomsonreuters.com/en/insights/articles/what-is-esi-discovery-and-protocol->

Diligent research has revealed not a single reported case in which any court has ordered what defendants blithely request here: production of electronic devices to opposing counsel rather than to qualified third-party forensic analysts.[7]  This standard restriction reflects two self-

---

[7] *See, e.g., John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008); *3D Sys. Corp. v. Miller*, No. 1:17-cv-03252-RLY, 2018 WL 7350939 (S.D. Ind. Mar. 13, 2018); *ANZ Advanced Techs., LLC v. Bush Hog, LLC*, No. 09-00228-KD, 2010 WL 11575131 (S.D. Ala. May 4, 2010); *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914 (N.D. Ill. Dec. 23, 2019); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV-ZLOCH, 2013 WL 12304563 (S.D. Fla. Sept. 20, 2013);

evident facts: (1) that non-experts are incapable of performing a proper review of electronic sources, and (2) that the judiciary requires ESI discovery to take place, if at all, without the inevitable and excessive invasion of privacy and breach of privilege resulting from an adversary's free access to presumptively confidential material.  These matters are elementary and do not require more than passing note.[8]

---

*Centennial Bank v. Servisfirst Bank, Inc.*, No. 8:16-cv-88-T-36JSS, 2020 WL 980461 (M.D. Fla. Feb. 28, 2020); *Chevron Corp. v. Donziger*, 425 F. Supp. 3d (S.D.N.Y. 2019); *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78, 2020 WL 6731027 (M.D. Fla. Sept. 2, 2020); *Cont'l Grp. v. KW Prop. Mgmt.*, No. 09-60202-CV, 2009 WL425945 (S.D. Fla. Feb. 20, 2019); *Delta T, LLC v. Williams*, 337 F.R.D. 395 (S.D. Ohio 2021); *Dodd v. Aeterna Zentaris, Inc.*, No. 9:17-cv-2382-PMD, 2018 WL 4300536 (D.S.C. July 10, 2018); *Feige v. Novitas Sols., Inc.*, No. 3:19-cv-395-J-34, 2019 WL 12043280 (M.D. Fla. Dec. 11, 2019); *HP Tuners, LLC v. Cannata*, No. 3:18-cv-00527-LRH, 2020 WL 4905533 (D. Nev. Aug. 20, 2020); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2017 WL 9249652 (N.D. Fla. Dec. 7, 2017); *Indus. Packaging Supplies, Inc. v. Davidson*, No. 6:18-0651, 2019 WL 850903 (D.S.C. Feb. 22, 2019); *Lincoln Benefit Life Co. v. Fundament*, No. SACV 18-000260-DOC, 2018 WL 6133672 (C.D. Cal. Nov. 7, 2018); *In re Marriott Int'l, Inc. Customer Sec. Breach Litig.*, No. 19-MD-2879, 2021 WL 961066 (D. Md. Mar. 15, 2021); *Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH (S.D. Cal. Dec. 21, 2018); *Ruby Slipper Café v. Belou*, No. 18-1548 (E.D. La. Apr. 6, 2020); *Sines v. Kessler*, No. 3:17-cv-00072, 2020 WL 3106318 (W.D. Va. June 11, 2020); *St. Jude Med. S.C., Inc. v. Tormey*, No. 11-cv-327, 2012 WL 13028909 (D. Minn. Oct. 31, 2012); *Uhlig LLC v. Shirley*, No. 6:08-cv-01208, 2011 WL 2728445 (D.S.C. July 13, 2011); *United Artists Corp. v. United Artist Studios LLC*, No. 2:29-cv-00282-MWF (C.D. Cal. Oct. 7, 2019).

[8]"[T]he Advisory Committee Notes to Rule 34 caution that inspection or testing of ESI 'may raise issues of confidentiality or privacy.' The Notes further suggest that the Rule is 'not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances.' The Advisory Committee also notes that a court should 'guard against undue intrusiveness' resulting from inspection of electronic devices, such as computer systems. . . . In determining whether forensic imaging is necessary, the Court should take into account the potential intrusiveness of ordering forensic imaging and must weigh the inherent privacy concerns against its utility. While unilateral and unfettered forensic examination of . . . electronic devices raise privacy concerns, the Court concludes that those privacy concerns can be ameliorated by prohibiting Defendant's expert from disclosing to Defendants (or others) information obtained during the computer examination and requiring Defendants' expert to destroy any data at the conclusion of its case."
*In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2017 WL 9249652 (N.D. Fla. Dec. 7, 2017) (motion to have plaintiffs' electronic devices unilaterally examined by defendant's

The absence of an appropriate ESI protocol is only part of the problem with the Yahyas' request.  Case law is replete with denials of access to electronic source material  – even when proposed for investigation by qualified third-party forensic analysts – when the requester has presented, as here, no more than speculation to the effect that there might possibly be discoverable material to be found. In *3D Sys. Corp. v. Miller*, No. 1:17-cv-03252-RLY, 2018 WL 7350939, *5 (S.D. Ind. Mar. 13, 2018), for example, the plaintiff company sought access to certain laptop computers which, the company claimed, might contain company information. The request for discovery was denied.  "3D Systems has failed to cite to any evidence beyond mere conjecture upon which it could have formed a reasonable belief that Tsou's or Berkay's laptop computers or cell phones actually contain any 3D Systems Information. . . .  3D Systems does not have a 'reasonable basis' to believe that the devices sought include 3D Systems Information relevant to this case; rather, 3D Systems' request appears to be part of a mere 'fishing expedition'—casting vast nets in the hope of capturing an edible morsel."  The same resulted in *Ruby Slipper Café v. Belou*, No. 18-1548, 2020 WL 1674157, *5 (E.D. La. Apr. 6, 2020) ("Any proof Plaintiff has provided that there may be any relevant information on these devices is skeptical at best. Such intrusive examination, in the Court's opinion, is more indicative of a fishing expedition. . . . [T]he Court does not find Plaintiff Ruby Slipper has sufficiently established good cause exists for the supplemental computer forensic examination and further finds the request is not proportional to the needs of the case. As such, the Court declines to compel forensic examination of the Panasonic laptop and other purported undisclosed desktop at

---

expert denied; joint examination by the parties' forensic experts authorized under standard restictive protocol).

this time"; *see also Lincoln Benefit Life Co. v. Fundament*, No. SACV 18-000260-DOC, 2018

WL 6133672 *3(C.D. Cal. Nov. 7, 2018) (ESI denied as "overly broad and not proportional to

the needs of the case").

  Ms. Bibi respectfully submits that the Yahyas have produced less of a claim to her

electronic data (even if accessed by a third-party professional) than in the above cited cases, and

that their request for access to her electronic data should be denied, with routine discovery to

take place thereafter in due course.   Should the Court nevertheless remain concerned about

Faisal Masih's allegations to the point of seeking review of Ms. Bibi's communications, it

should fashion relief sufficient to resolve those concerns without working the invasion of

personal privacy contemplated by the Yahyas' demand.  Pursuant to any such order of this Court,

Ms. Bibi will without objection remit her electronic equipment to a qualified third-party forensic

ESI professional paid for by the Yahyas, together with information permitting confidential

access to her communications by said expert alone, for examination pursuant to the following

protocol:

  \*  Prompt imaging of the relevant contents of her equipment, which will be
    promptly returned to her upon completion of imaging,

  \*  Search for communications pursuant to appropriate key words,

  \*  Provision of the results of the search by the expert to the Court *in camera* and to
    Ms. Bibi's counsel, and

  \*  Destruction/deletion of all of Ms. Bibi's data, including her passwords, by the
    retained expert.

In the interests of even-handedness and fairness, and in light of the concerns Ms. Bibi has

previously stated to the Court about pressure being applied on her relatives in Pakistan, if Ms.

Bibi's communications devices are to be searched as indicated, it would appear appropriate to

subject those of the Yahyas to the same protocol as well.  Ms. Bibi seeks none of this, however,

and is simply seeking parity with the Yahyas' demands regarding herself, should they be granted

over her objection.  Following its review of the fruit of these examinations, the Court can take

such further action as it sees fit.


### Response to Motion for Hearing on Sanctions

In light of newly acquired information not elaborated here, counsel for Ms. Bibi join the

Yahyas in believing that sanctions should indeed be imposed on the appropriate parties arising

out of wrongful actions still taking place in Pakistan to intimidate witnesses or improperly to

influence the course of litigation in this court.  To this end, Ms. Bibi, by counsel, would ask for

such hearing to take place (a) after September 16, 2021, at which time it will be known whether

the Rahmans will appear in this lawsuit, (b) after discovery from certain Pakistani witnesses has

been concluded, presumably via Zoom, and (c) with courtroom accommodations for testimony

from witnesses in Pakistan via telephone, Zoom, or other remote means approved by the Court.


### Conclusion

For these reasons, the Yahyas' motion should be denied in pertinent part.

Respectfully submitted,

REHANA BIBI,

By counsel

-11-

Dated:   July 29, 2021

Counsel for Plaintiff:


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
BibiRahana\Pleadings\RespMSanctions


//s// Matthew T. Sutter
Matthew T. Sutter, #66741
Khadeja Tipu, #93813
Sutter & Terpak, PLLC
7540A Little River Turnpike, First Floor
Annandale, VA 22003
703.256.1800 / Fax: 703. 991.6116
matt@sutterandterpak.com



//s// Alexandra M. Lydon
Alexandra M. Lydon #90122
Dipti Pidikiti-Smith, #73318
Alina Launchbaugh #94217
Legal Services of Northern Virginia
100 N Pitt Street, #307
Alexandria, VA 22314
703.504.9155 / Fax: 571.386.0641
alydon@lsnv.org

<u>Certificate of Service</u>

I, Victor M. Glasberg, certify that on this 29th day of July, 2021, I filed a copy of this Memorandum in Opposition to the Yahya's Motion for Discovery and Sanctions, plus two exhibits, with the clerks ECF system.

<u>//s// Victor M. Glasberg</u>
Victor M. Glasberg
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
<u>vmg@robinhoodesq.com</u>


Counsel for plaintiff
